**Aubrey Vernell HAYNES, Plaintiff,**

v.

**MICHIGAN DEPARTMENT OF CORRECTIONS, John Jabe, Chris Daniels, Gregory Larkens, Douglas Carpenter, and Donald Mason, Defendants.**

No. 89–70948.

United States District Court,
E.D. Michigan, S.D.

March 5, 1991.

David Kraus, Detroit, Mich., for plaintiff.

Linda Olivieri, Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is a prisoner civil rights case. 42 U.S.C. § 1983. Plaintiff Aubrey Haynes (Haynes) was stabbed by fellow inmate Paul Saunders–El (Saunders–El) on August 8, 1988, while incarcerated at the State Prison for Southern Michigan (SPSM) in Jackson. Haynes alleges that he told defendant corrections officers Gregory Larkens (Larkens) and Douglas Carpenter (Carpenter) that he had been threatened by Saunders–El and that they took no action. Haynes also alleges that he sent letters to defendants warden John Jabe (Jabe) and assistant warden Chris Daniels (Daniels) stating that he feared for his own safety and that no action was taken. Finally, Haynes alleges that defendant corrections officer Donald Mason (Mason) deliberately averted his attention from a portion of the prison yard, enabling Saunders–El to attack him. According to Haynes's complaint, the deliberate indifference of the above individuals and defendant Michigan Department of Corrections to his concerns for his safety constitutes a violation of his Eighth Amendment rights and a denial of due process.

On August 10, 1990 defendants filed a motion for summary judgment. On September 4, 1990, Haynes responded. In his response to defendants' motion, Haynes consented to the dismissal of defendant Daniels. Haynes also moved for leave to amend his complaint to add assistant warden Frank Elo (Elo) and counselor Michelle Murphy (Murphy) as defendants, presumably on the grounds that they had knowledge of Saunders–El's threats and did nothing to safeguard Haynes. The Court heard oral argument on the motions on October 29, 1990. On November 16, 1990, the parties stipulated to a dismissal of defendants Jabe and Mason. For the reasons that follow, defendants' motion is GRANTED, and Haynes's motion is DENIED.

### II.

Haynes was housed in 5 block at SPSM in administrative segregation, the highest level of prison security, at the time he was attacked. Haynes was sent to administrative segregation because he was found guilty of possession of dangerous contraband. On August 8, 1988 Haynes chose to go to the athletic yard rather than stay locked in his cell. Haynes and his fellow inmates were searched manually and by a metal detector before entering the yard. At yard, Haynes was attacked by Saunders–El when Mason moved to one end of the yard to light a prisoner's cigarette. Haynes received multiple stab wounds to the head and neck.

In his deposition, Haynes stated that he was first threatened by Saunders–El, who occupied the cell next to his in 5 block, on or about July 12, 1988. Shortly after being threatened, he said that he informed Larkens and Carpenter of the threat. Larkens and Carpenter deny that Haynes told them of a threat by Saunders–El. At their depositions, they both testified that if a prisoner informed them of a threat on his life, they would immediately place the prisoner on top lock, feed-in-cell status and would not permit the prisoner to leave his cell before a hearing was held. They would write a notice of intent explaining the nature of the threat described by the prisoner. Then, a hearing would be held by the security classification committee to determine whether the prisoner should be placed in protective segregation. None of these events happened in this case.

Haynes also stated, in deposition testimony, that he wrote to Jabe on July 13 and July 27, 1988 requesting protection from Sanders–El. Defendants assert that no letters from Haynes were received by Jabe on these dates. At her deposition, Jabe's secretary, Ina Hale (Hale), testified that she found only a letter dated July 19 when she searched her files. In that letter, Haynes said that he feared enemies located in 4 block and did not want to be placed there

when he got out of segregation. He made no mention of Saunders–El.

Haynes initially claimed that he had received a copy of the July 27 letter from defendants in discovery. However, after oral argument, Haynes's attorney notified the Court by letter that the claim was not true. The July 27 letter includes a guard's signature verifying that it was mailed to Jabe. It references a July 13 letter and mentions that Haynes told Larkens and Carpenter that Saunders–El had threatened him. In his papers, Haynes admits that there were only two letters, conceding that no letter dated July 13 exists.

All prisoner letters sent to Jabe during the relevant period of time were screened by Hale. Letters evincing a prisoner's fear for his safety were directed to Elo. At his deposition, Elo stated that he tended to not take letters from prisoners concerned about their safety very seriously because "if the prisoner thought the threat was real, why on earth would he sit down, compose a letter, put it into the mail, knowing it will take several days to get to its destination." Elo Dep. at 16. Elo also stated that, if he had received the July 27 letter, he would have forwarded it to a counselor. Haynes's counselor at the time of his attack was Murphy. At her deposition, Murphy testified that she does not remember ever forwarding information about inmates who feared for their lives to anyone.

### III.

### A.

■ Defendants Larkens and Carpenter argue that they are not liable under 42 U.S.C. § 1983 for any alleged failure to protect Haynes from assault by another inmate. Relying on *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), they argue that a prison official's negligent failure to take action to protect a prisoner, even when the prisoner has informed the official that he is in danger, is not actionable. While this is true, the Court finds that the current case is not a negligence case. Rather, Haynes has specifically alleged that the defendants acted with deliberate indifference and willful, wanton, or reckless disregard for his safety.[1] As noted by Haynes, the decision in *Davidson* did not rule out claims based on allegations of deliberate or callous indifference to a prisoner's needs. 474 U.S. at 347, 106 S.Ct. at 670. Therefore, Larkens and Carpenter cannot be dismissed on this ground.

### B.

■ Larkens and Carpenter also contend that, although they had no knowledge of the threat to Haynes, the due process clause is not triggered by mere knowledge of a threat. In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the United States Supreme Court held that, despite a county department's knowledge of a potential threat to a child released to the custody of his natural parents, the county had no duty to protect the child from that threat. Larkens and Carpenter argue that *DeShaney* should be extended to the current case. The Court disagrees.

In a recent opinion in another § 1983 action resulting from a case of child abuse, Judge Richard Posner, the Seventh Circuit Court of Appeals judge whose decision was affirmed by *DeShaney*, distinguished between "negative liberties" cases like the current matter and "positive liberties" cases like *DeShaney*:

> Here, in contrast, the state removed a child from the custody of her parents; and having done so, it could no more place her in a position of danger, deliberately and without justification, without violating her rights under the due pro-

---

1. In their papers, defendants argue that because Haynes uses the words "failed" in his complaint, he is actually raising a negligence claim against defendants' for failure to fulfill their respective duties and protect him. This is silly. The adoption of the Federal Rules of Civil Procedure in 1938 heralded the end of the era of code pleading and the beginning of notice pleading. A plaintiff is not required to plead his cause of action by using only certain "magic words." The complaint filed by Haynes easily meets the requirements of notice pleading as they apply to a claim of deliberate indifference.

cess clause of the Fourteenth Amendment than it could deliberately and without justification place a criminal defendant in a jail or prison in which his health or safety would be endangered, without violating his rights ... under the cruel and unusual punishments clause of the Eight Amendment.

*K.H. v. Morgan,* 914 F.2d 846, 849 (7th Cir.1990). Here, Haynes has alleged that he was deliberately and without justification left in a place where his safety was endangered. Summary judgment based on the holding in *DeShaney* is not warranted.

### C.

■ Despite the fact that Haynes has stated claims against Larkens and Carpenter, summary judgment must be granted because the record simply does not support those claims. In order to make out an Eighth Amendment claim for deliberate indifference, a prisoner must show that the defendant caused "unnecessary and wanton infliction of pain ... by deliberately disregarding a serious threat to [his] safety after actually becoming aware of that threat. A[n] inadvertent or negligent failure to adequately protect the [prisoner] does not constitute deliberate indifference." *Walker v. Norris,* 917 F.2d 1449, 1454 (6th Cir.1990). Haynes cannot make the requisite showing.

The sole basis for his claim against Larkens is his deposition testimony that he told Larkens that he had been threatened by Saunders–El. Similarly, the sole basis for his claim against Carpenter is his deposition testimony that he twice told Carpenter that he had been threatened by Saunders–El. "Although the nonmoving party's evidence in opposition to summary judgment need not be of the sort admissible at trial, he must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts." *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990) (citation omitted). Haynes's deposition testimony does not meet this standard.

Neither Larkens nor Carpenter recall Haynes telling them about any threats against him, and the behavior of Larkens, Carpenter, and Haynes is inconsistent with Haynes's version of the events. Neither Larkens nor Carpenter took any of the actions that they would ordinarily take upon being informed by a prisoner of a threat on his life. More importantly, despite having been threatened by Saunders–El, Haynes chose to go to the athletic yard and expose himself to the potential danger presented by Saunders–El rather than staying in the comparative safety of his cell. Although the Court is required to draw any possible inferences in favor of the nonmovant when ruling on a motion for summary judgment, when the record describes behavior inconsistent with the facts presented in the nonmovant's deposition testimony, the Court's ability to draw such inferences is limited. Haynes can show neither that Larkens or Carpenter were aware of a threat against him nor that they *deliberately* ignored the threat. Indeed, given Haynes's behavior, the record is not even conclusive as to whether Saunders–El threatened Haynes prior to the attack. As a result, Haynes cannot make out an Eighth Amendment claim for deliberate indifference against either Larkens or Carpenter, and summary judgment must be GRANTED.

### IV.

■ Haynes also seeks leave to amend his complaint to add Elo and Murphy as defendants. Defendants oppose the amendment solely on the ground that it would be futile because Haynes does not claim that he contacted either Murphy or Elo with any information regarding his personal safety. This assumes either that Haynes never sent the July 27, 1988 letter to Jabe or that Jabe never received it. The Court is satisfied that one of these two scenarios is true.

Haynes says that granting leave to amend his complaint will not necessitate additional discovery. However, the only evidence in the record that suggests that the July 27 letter exists comes from Haynes himself and cannot be corroborated independently. As noted above, that is not

enough. If Haynes did not send the letter, and/or Jabe's office did not receive it, the letter reviewing process would not have been set in motion. Neither Elo nor Murphy would have seen it. Therefore, it would be sheer speculation to say both that the letter existed and that Murphy and Elo ignored it deliberately. Permitting Haynes to amend his complaint would be futile, and leave to amend is DENIED.

## V.

Because Haynes's claims against all of the prison officials named have been dismissed, it is clear that his claim against the Michigan Department of Corrections must also be dismissed. Even if some of Haynes's claims against prison officials had survived summary judgment, his claim against the Michigan Department of Corrections, an arm of the State of Michigan, would be barred by the Eleventh Amendment. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

SO ORDERED.