No. 95-2828

Ricky Davis,                              *
                                          *
          Appellant,                      *
                                          *   Appeal from the United States
     v.                                   *   District Court for the
                                          *   Eastern District of Missouri.
Helen Scott; Tom Villmer;                 *
James Purkett; Ian Wallace,               *
                                          *
          Appellees.                      *


Submitted:  May 13, 1996

Filed:  August 23, 1996


Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN,
      Circuit Judge.


BOWMAN, Circuit Judge.


     Ricky Davis, an inmate at the Farmington Correctional Center (FCC)
in Missouri, initiated this 42 U.S.C. § 1983 (1994) action pro se,
claiming, inter alia, that prison officials Helen Scott, Tom Villmer, James
Purkett, and Ian Wallace failed to protect him from an assault by another
inmate.  The District Court[1] granted summary judgment in favor of the
prison officials, concluding that in the absence of any particularized
threat to Davis's safety, the prison officials had acted reasonably in
returning Davis to the general population.  For reversal, Davis argues that
the District Court erred in: (1) granting the defendants' motion for
summary judgment on his claim that the prison officials were deliberately

---

[1]The Honorable George F. Gunn, Jr., United States District
Judge for the Eastern District of Missouri.

indifferent to his safety; and (2) refusing to appoint counsel.  We affirm.

The facts relevant to this appeal are undisputed.  Davis, a prison informant, transferred to FCC from Jefferson City Correctional Facility in 1991.  Upon his arrival at FCC, Davis was placed in protective custody because he had known enemies in the general prison population.[2]  In February 1994, prison officials held a classification hearing to determine whether Davis should be returned to the general population.  At that hearing, Davis could not name any specific enemies in the general population, and it was determined that his known enemies were no longer inmates at FCC.  Davis nevertheless requested to stay in protective custody because he believed that friends of his departed enemies remained at FCC and might try to harm him if he were released to the general population; he was unable, however, to provide prison officials with the names of any such inmates.  Davis thus having failed to show that there was any specific threat to his safety, he was

---

[2]The FCC policy on protective custody states:
[A]n inmate request[ing] protective custody . . . must present evidence or information which will support the request.  . . . [The evidence] must be sufficient to warrant placement in protective custody as determined by the protective custody committee and approved by the institution head.

Missouri Department of Corrections and Human Resources, Institutional Services Policy and Procedure Manual, Procedure No. IS21-1.3 § III. B.2 (1991).  Evidence supporting a protective custody request may include any or all of the following:

(a) description of the event leading to the request . . ., (b) injuries sustained . . . (c) alleged enemy's name, and/or number, (d) alleged enemy's work area, (e) description of the alleged enemy, (f) picture identification of the alleged enemy, (g) alleged enemy's housing area, and/or, (h) other information which will lead to solid evidence during the investigation.

Id.

returned to the general population.  On March 10, 1994, while standing near the FCC gym, Davis was hit in the back of the head.  He sustained minor injuries including a bump and a small cut.

Davis argues that the District Court erred in granting summary judgment to the defendant prison officials on his claim that they violated his constitutional right to protection from assaults by other inmates.  We review de novo the decision to grant a summary judgment motion.  Maitland v. University of Minn., 43 F.3d 357, 360 (8th Cir. 1994).  We will affirm the grant of summary judgment if the record shows there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law.  Id.; see also Fed. R. Civ. P. 56(c).  After carefully reviewing the record, we are convinced that the District Court properly granted summary judgment in favor of the defendants.

The Eighth Amendment imposes upon prison officials, among other things, the duty to take reasonable measures  "`to protect prisoners from violence at the hands of other prisoners.'"  Farmer v. Brennan, 114 S. Ct. 1970, 1976 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.) (internal quotation marks and citation omitted), cert. denied, 488 U.S. 823 (1988)).  "Being violently assaulted in prison is simply not `part of the penalty that criminal offenders pay for their offenses against society.'"  Id. at 1977.  Nevertheless, "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  Id.

To prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings.  First, he must demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 1977.  Second, the inmate must show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979. Thus, it is not enough that a reasonable person would have been aware of the risk; the prisoner must demonstrate by facts, and reasonable inferences therefrom, that the particular defendant was aware of the substantial risk at issue. Id. at 1981. The Supreme Court has cautioned, however, that under this standard a prison official would not necessarily escape liability just because he could not verify a particular risk, if he strongly suspected the risk to exist. Id. at 1982.

In this case, prison officials conducted a classification hearing to determine whether it was appropriate to return Davis to the general population. At the time of the hearing, the inmates on Davis's enemies list were no longer incarcerated at FCC. While Davis explained that he feared someone would attack him if he returned to the general population, he could not provide prison officials with the names of any of his would-be attackers. Davis's statements that friends of his enemies remained in the general population were equally vague and unsubstantiated. As the Supreme Court has reminded us, we do not take the duty of prison officials to provide for the safety of inmates lightly. Id. at 1986 (Blackmun, J. concurring). However, there being no solid evidence here of an identifiable serious risk to Davis's safety, the prison officials were not deliberately indifferent in returning him to the general prison population, and they were entitled to summary judgment. See Robinson v. Cavanaugh, 20 F.3d 892, 895 (8th Cir. 1994) (per curiam) (affirming summary judgment in favor of defendants on failure-to-protect claim where inmate failed to demonstrate that prison officials acted with deliberate indifference by not placing him in protective custody based on general fear for his safety).

Davis also argues that the District Court erred in denying his multiple requests for appointment of counsel. We review such

rulings under the abuse-of-discretion standard. <u>Swope v. Cameron</u>, 73 F.3d 850, 851-52 (8th Cir. 1996). "Indigent civil litigants do not have a constitutional or statutory right to appointed counsel." <u>Edgington v. Missouri Dep't of Corrections</u>, 52 F.3d 777, 780 (8th Cir. 1995). The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim. <u>Swope</u>, 73 F.3d at 852; <u>In re Lane</u>, 801 F.2d 1040, 1043-44 (8th Cir. 1986).

Here, Davis's claims were not factually or legally complex. There was no material conflict in the evidence relevant to his failure-to-protect claim. His written presentations to the court, including a lengthy response to defendants' motion for summary judgment, were clear and detailed, illustrating his ability to investigate the facts and present his claims. In these circumstances, we cannot say that the District Court abused its discretion in refusing to appoint counsel. See <u>Phelps v. United States Fed. Gov't.</u>, 15 F.3d 735, 737 (8th Cir.), <u>cert. denied</u>, 114 S. Ct. 2118 (1994).

For the foregoing reasons, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.